784 So.2d 1201 (2001)
Lewis Frank RIBICH, III, Appellant,
v.
EVERGREEN SALES & SERVICE, INC., a Florida corporation, and Raymond Baldorossi, Jr., Appellees.
No. 2D99-4204.
District Court of Appeal of Florida, Second District.
April 11, 2001.
George A. Vaka of Vaka, Larson & Johnson, P.L., Tampa, and Denise E. Vaughan of Wagner, Vaughan & McLaughlin, Tampa, for Appellant.
Valeria Hendricks and Cody Fowler Davis of Davis & Scarritt, P.A., Tampa, for Appellees.
NORTHCUTT, Judge.
In this case the circuit court ruled by summary judgment that Lewis Ribich had made a settlement agreement with the liability insurer of Evergreen Sales & Service, Inc. and its employee, Raymond Baldorossi. Therefore, the court ruled, Ribich's personal injury lawsuit against Evergreen and Baldorossi was barred. In so doing, the court denied Ribich's cross-motion for summary judgment on the settlement defense. We reverse because the undisputed facts proved that the parties had not reached an enforceable settlement.
While bicycling on September 8, 1998, Ribich suffered serious injuries in a collision with a truck owned by Evergreen and driven by Baldorossi. Shortly after the *1202 accident, Hartford Insurance Company claims specialist Jim Castellani met Ribich's wife at the hospital and learned that Ribich was in the military. After this meeting, he sent a letter to Ribich on October 9, 1998, offering to pay Hartford's $50,000 policy limits to settle the claim. The settlement offer had two conditions: the execution of a release and the execution of a no-lien affidavit, both of which were transmitted with the letter. The no-lien affidavit required Ribich to affirm under penalty of perjury that he had not been treated in any veteran's hospital and that he had not received any medical care at the government's expense. On January 11, 1999, Castellani received the executed release, but Ribich had not signed or returned the no-lien affidavit. That day Castellani wrote to Ribich stating that Hartford could not issue the $50,000 draft without an executed no-lien affidavit.
On February 2, 1999, Mrs. Ribich advised Castellani by telephone that neither she nor her husband wanted to execute the no-lien affidavit. As a U.S. Naval officer, Ribich would have been committing perjury had he signed it. Castellani spoke with Mrs. Ribich the next day and confirmed that Hartford was not going to waive execution of the no-lien affidavit as a condition of settlement.
On February 9, Castellani spoke with Ribich's attorney, Denise Vaughan, and again advised that Hartford would not settle the case unless the Ribiches executed the no-lien affidavit. Vaughan, likewise, reiterated her clients' refusal to sign the affidavit and demanded that Hartford deliver its settlement check the next day. However, no check was sent.
Castellani passed the file to his supervisor, Linda Albine, on February 10. In her deposition, Albine testified that she and Vaughan spoke that day. Her notes of the conversation reflected that Hartford proposed as an additional settlement condition that Ribich provide Hartford with medical authorizations. Vaughan rejected that condition.
Albine testified that during a telephone conversation with Vaughan on February 15, she advised Vaughan that Hartford was conferring with the insured about its options. Vaughan reiterated her contention that the insurer had no obligation to protect the Veteran's hospital. In her deposition Albine testified that the known existence of liens rendered Hartford's pursuit of a no-lien affidavit academic. But she acknowledged that she never informed Vaughan that Hartford would not require the affidavit.
On February 22, 1999, Hartford sent a $50,000 check to Vaughan, unaccompanied by any letter or description. Vaughan returned the check with a letter stating that the Ribiches rejected Hartford's conditional offer to settle the claim in exchange for their execution of a release and no-lien affidavit. Subsequently, the Ribiches filed suit.
Settlement agreements are governed by the law of contracts. Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985). The party seeking judgment based on a settlement has the burden of establishing assent by the opposing party and must establish that there was a meeting of the minds or mutual or reciprocal assent to certain definite propositions. Id. To result in a contract, an acceptance of an offer must be absolute and unconditional, identical with the terms of the offer and in the mode, at the place and within the time expressly or impliedly required by the offer. Sullivan v. Econ. Research Props., 455 So.2d 630, 631 (Fla. 5th DCA 1984). A counteroffer operates as a rejection of a preceding offer. Padron v. Plantada, 632 So.2d 113 (Fla. 3d DCA 1994).
In this case the circuit court ruled that the Ribiches' counteroffer to accept *1203 the liability limits without executing the no-lien affidavit remained outstanding on February 22, when Hartford accepted it by delivering the check. We disagree. The Ribiches' last offer to settle on those terms was made February 9, and it was conditioned on Hartford delivering the settlement check the next day. Instead, the next day Hartford proposed an additional settlement condition, i.e., that Ribich furnish medical authorizations. The Ribiches rejected this counteroffer. Although Vaughan and Albine discussed the claim on February 15, the record does not reflect the making of any offers or counteroffers during that conversation. Thus, as of February 22 there were no outstanding settlement offers by either party. Hartford's delivery of the check without requiring a no-lien affidavit evinced a new settlement offer which the Ribiches were not obliged to accept. Therefore, the circuit court should have denied the defendants' motion for summary judgment on their settlement defenses and should have granted the plaintiffs' motion.
Reversed and remanded for further proceedings.
WHATLEY, A.C.J., and DAVIS, J., concur.