NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

H. GREG LEE, personal
representative of the Estate of
Raymond Consul, deceased,

    Appellant,

v.

MARK CHMIELEWSKI, as court
appointed guardian for Matthew
Martin,

    Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2D17-4275

Opinion filed November 15, 2019.

Appeal from the Circuit Court for Sarasota
County; Frederick P. Mercurio, Judge.

Paul L. Nettleton of Carlton Fields Jorden
Burt, P.A., Miami, for Appellant.

Kristin A. Norse and Stuart C. Markman
of Kynes, Markman & Felman, P.A.,
Tampa, for Appellee.


LEFLER, LAWRENCE M., Associate Judge.

        H. Greg Lee, personal representative of the Estate of Raymond Consul,

challenges the final judgment entered in favor of Mark Chmielewski, as court-appointed

guardian for Matthew Martin, in Martin's action against Consul for damages resulting

from a tragic car accident that left Martin in a vegetative state.[1]  We must reverse the final judgment because the trial court erred by entering summary judgment for Martin and denying Consul's summary judgment motion in which he alleged that he and Martin had entered into a binding settlement agreement prior to trial.

Martin sustained his injuries as the result of a motor vehicle accident in which he was a passenger in a car operated by Consul.  When the accident occurred on September 20, 2010, Consul had an automobile insurance policy through GEICO Indemnity Insurance Company that provided bodily injury coverage of $10,000 per person.

In August 2011, GEICO, operating under the mistaken belief that Martin's father Michael Martin held a power of attorney for his son, tendered a check for policy limits in the name of Michael Martin.  Michael Martin cashed the check and executed a release on his son's behalf.  Subsequently, in January 2012, GEICO contacted Michael Martin's former attorney seeking documentation that Michael Martin had the legal authority to represent his son.  The attorney responded that she had no such documents.  The record before us reflects that GEICO took no further steps to ensure that it had tendered policy limits to the correct party.

On July 15, 2013, Chmielewski was appointed plenary guardian of the person and property of Martin.  When Chmielewski learned that GEICO had tendered payment of policy limits to Martin's father, he retained counsel for Martin and authorized counsel to make an offer to GEICO to settle Martin's claim against Consul.  By letter of November 26, 2013, counsel for Martin informed GEICO that any payment made to

---

[1]Raymond Consul passed away during the pendency of this appeal, and H. Greg Lee, as personal representative of the Estate of Raymond Consul, was substituted as appellant.

Michael Martin was unauthorized. Counsel additionally conveyed the following settlement offer:

> Our client, Mr. Chmiel[ew]ski, reviewed the prior correspondence associated with the claim of Matthew and we have determined that his father, Michael Martin, was never Matthew's authorized legal representative. I understand that Geico tendered the limits of coverage to the father and apparently received a purported release of Matthew's claim. It is clear that the release was a Geico form release which was modified for execution by the father. It is now clear that Geico tendered the funds to an unauthorized representative. A part of my duties involves exploring any and all avenues of recovery for Matthew. I would like to resolve any question of the legitimacy of the prior release by providing Geico with an opportunity to tender the bodily injury limits under the above-referenced insurance policy to Matthew's legal court-appointed representative, Mark Chmiel[ew]ski, as Guardian for Matthew Martin. If this offer is accepted, I agree to have Mr. Chmielewski execute a legally-enforceable release containing the same material terms and conditions as the prior release and also obtain any required . . . guardianship court approval of the settlement.

> I believe you have received all necessary information necessary to evaluate this claim. Based on the fact that the Geico automobile insurance policy accompanying your letter to me dated 11/8/2013 reflects that the limits of bodily injury liability insurance for Mr. Consul is $10,000 per person, please send your $10,000 check payable to Mark Chmielewski, as Guardian for Matthew Martin. This offer will remain open for fourteen (14) days from the date of this letter after which it will be withdrawn without further notice.

Fourteen days later, on December 10, 2013, at 5:01 p.m., GEICO faxed to Martin's counsel a letter seeking an extension of time to respond to the offer. At 5:42 p.m., GEICO sent a second fax to Martin's counsel, the cover sheet of which stated, "Acceptance of demand." The attached letter read: "In response to your demand letter dated November 26, 2013, GEICO Indemnity Company is agreeing to tender the [bodily injury] limits of $10,000 as outlined in your demand. The check and release will follow

under separate cover."[2]  Additionally, GEICO instructed one of its field representatives to deliver a $10,000 check to counsel's office.  The field representative attempted to call counsel's office between 5:15 and 5:45 p.m., but no one answered.  He testified at deposition that he did not leave a message and that he did not "recall having the ability to leave a message."  He then went to counsel's office with the settlement check.  When he arrived between 7:00 and 7:15 p.m., the front doors of the building were locked and there was no mail slot, so he left with the check.  The following day, he returned to counsel's office with the check, which he left with an employee.

On December 11, 2013, counsel for Martin sent a letter to GEICO, acknowledging receipt of the letter faxed on December 10, 2013, but stating that "the time frame for acceptance of our November 26, 2013 settlement offer expired yesterday at 5:00 p.m."  Counsel also stated that Martin had directed him to move forward with a lawsuit against Consul.  By letter dated December 16, 2013, counsel returned the settlement check to GEICO.

On December 12, 2015, Chmielewski filed on Martin's behalf an action against Consul for damages incurred due to the injuries Martin suffered as a result of the accident.  In his answer, Consul asserted as an affirmative defense that the action was barred by a prior settlement.  Consul subsequently filed numerous motions for summary judgment, maintaining that GEICO, acting on his behalf, had accepted Martin's settlement offer either (1) by its December 10, 2013, fax in which it stated that it accepted the offer and that the check would follow; (2) by its field representative's bringing a check for policy limits to counsel's office on December 10, 2013; or (3) by

_____

[2]Although the letter was dated December 11, 2013, it is undisputed that it was faxed to Martin's counsel at 5:42 p.m. on December 10, 2013.

delivering the check to counsel's office the next day and having it accepted by counsel's staff. The trial court, however, denied all of Consul's motions for summary judgment but granted Martin's motion for summary judgment as to his affirmative defense that Consul's claim was "barred by prior settlement and/or accord and satisfaction." In its order, the trial court ruled that "GEICO failed to tender the settlement funds as required by the settlement offer. As a result, GEICO's attempted acceptance of the settlement offer was not absolute and unconditional, identical with the offer terms, and therefore fails to comply with Florida's requirement of a mirror-image acceptance." The case then proceeded to jury trial, and the trial court entered final judgment on the jury's verdict in favor of Martin and against Consul in the amount of $14,399,363.05.

On appeal, Consul argues that the trial court erred in denying his motions for summary judgment as to his settlement defense and granting summary judgment in favor of Martin because GEICO accepted the offer according to its terms when it faxed its acceptance to Martin's counsel at 5:42 p.m. on December 10, 2013. Because Martin's offer was not specific as to time and manner of acceptance, we must agree.

> "Settlement agreements are governed by contract law." Schlosser v. Perez, 832 So. 2d 179, 182 (Fla. 2d DCA 2002) (citing Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985)). A settlement agreement forms only when one party makes an offer and the other party accepts. . . . The general rule is that "an acceptance of an offer must be unconditional and identical with the terms of the offer." Id. (citing Giovo v. McDonald, 791 So. 2d 38, 40 (Fla. 2d DCA 2001)).

Lunas v. Cooperativa de Seguros Multiples de Puerto Rico, 100 So. 3d 239, 241 (Fla. 2d DCA 2012). Here, the offer stated, "I would like to resolve any question of the legitimacy of the prior release by providing Geico with an opportunity to tender the bodily injury limits under the above referenced policy to Matthew's legal court-appointed

representative."  (Emphasis added.)  The offer also stated: "If this offer is accepted, I agree to have Mr. Chmielewski execute a legally enforceable release . . . .  [P]lease send your $10,000 check payable to Mark Chmielewski, as Guardian for Matthew Martin."  (Emphasis added.)  Finally, the offer defined the time period in which it would remain a valid offer: "This offer will remain open for fourteen (14) days from the date of this letter after which it will be withdrawn without further notice."

With regard to the timing of GEICO's response on December 10, 2013, although it may have been reasonable for Martin's counsel to close his office at normal business hours on December 10, 2013, because Martin's offer did not indicate a specific time on the fourteenth day when it would expire, we cannot read such a limitation into the offer.  See Razin v. A Milestone, LLC, 67 So. 3d 391, 396 (Fla. 2d DCA 2011) ("[W]here there is 'an unambiguous contractual provision . . . , a . . . court cannot give it any other meaning beyond that expressed and must construe the provision in accord with its ordinary meaning.' " (quoting Emergency Assocs. of Tampa v. Sassano, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995))).  Giving ordinary meaning to the offer's time provision of "fourteen days from the date of this letter," GEICO had the full twenty-four hours on December 10, 2013, to accept the offer.

The question then becomes whether GEICO's actions on December 10, 2013, were sufficient to accept the offer.  We conclude that they were.

On appeal, Consul argues that Martin's settlement offer was a bilateral contract that required GEICO to merely promise to pay the policy limits in order to accept the offer.  Chmielewski, however, maintains that the settlement offer amounted to a unilateral contract by which GEICO was required to tender policy limits in order to accept the offer before it expired.  The trial court seems to have agreed with

- 6 -

Chmielewski, as it determined that GEICO's actions were insufficient to accept the offer because "GEICO failed to tender the settlement funds as required by the settlement offer." In reviewing this ruling, we conclude that we need not determine whether Martin's settlement offer constituted a unilateral or a bilateral contract because in either case GEICO's actions were sufficient to accept the offer before it expired.

First, if GEICO needed only to promise to tender policy limits by the end of December 10, 2013, in order to accept the offer, it accomplished that with the fax it sent at 5:42 p.m., which stated that GEICO was accepting the offer and that the check and release would "follow under separate cover." But even if actual tender of the check was required for GEICO to effectively accept Martin's settlement officer, GEICO achieved that when its field representative arrived at counsel's office between 7:00 and 7:15 that evening with check in hand. Despite the fact that no one was present to accept the check, such was sufficient to constitute a tender of the settlement funds. See Distribution Mgmt. Servs., Inc. v. S. Waste Sys., Ltd., 948 So. 2d 6, 12 (Fla. 3d DCA 2006) ("[A] tender is an unconditional offer of payment, and . . . the 'only distinction between tender and payment lies in the fact that a tender is not accepted, while a payment is.' " (quoting Rissman ex rel. Rissman Inv. Co. v. Kilbourne, 643 So. 2d 1136, 1140 (Fla. 1st DCA 1994))); cf. Southfork Invs. Grp. v. Williams, 706 So. 2d 75, 79 (Fla. 2d DCA 1998) ("To make an effective tender, [one] must actually attempt to pay the sums due; mere offers to pay, or declarations that the [individual] is willing to pay, are not enough."). Consul should not be penalized because Martin's counsel was not available to accept the tender. See Cullum v. Packo, 947 So. 2d 533, 536 (Fla. 1st DCA 2006) ("[T]he unrebutted evidence shows that Cullum delivered the check to Packo on April 16—well within the ten-day cure period. We see no reason why Cullum

should be penalized for Packo's failure to be available to accept payment.").

Accordingly, we conclude that the trial court erred in determining that GEICO had failed to accept Martin's settlement offer and in denying Consul's motion for summary judgment and instead granting Martin's. As such, we must reverse the final judgment and remand for entry of summary judgment in Consul's favor.[3] Because we reverse the final judgment, we must also reverse the final judgment awarding costs pursuant to section 57.041, Florida Statutes (2017).

Reversed and remanded.

ROTHSTEIN-YOUAKIM and ATKINSON, JJ., Concur.

---

[3]We note that best practices would suggest that insurers like GEICO not wait until the last day of an offer period to first consider an offer or wait until after normal business hours to contact an offeror.